**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 25-cv-1552-WJM-MDB

ERIC J. KELLY, *by and through his Special Conservator on behalf of* R.K.,
M.K., and
J.M.,

Plaintiffs,

v.

CEDAR SPRINGS HOSPITAL, INC.,
*a Delaware corporation*,

Defendant.

---

**ORDER OVERRULING OBJECTION AND ADOPTING FEBRUARY 13, 2026 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE IN FULL**

---

Plaintiffs R.K. (the "Child"), by and through his Special Conservator, Eric J. Kelly, M.K., and J.M. (collectively, "Plaintiffs"), sued Cedar Springs Hospital, Inc. ("Defendant") after the Child was allegedly sexually assaulted by another child patient at Defendant's facility at Cedar Springs Hospital ("Cedar Springs"). This matter is before the Court on the February 13, 2026 Recommendation of United States Magistrate Judge Maritza Dominguez Braswell (the "Recommendation") (ECF No. 113) recommending that Defendant's Motion to Dismiss be granted in part and denied in part, and Plaintiffs' Motion for Summary Judgment be denied. The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Plaintiffs filed a timely objection ("Objection"). (ECF No. 123.) Defendant responded but did not file any objection of its own to the Recommendation. (ECF No. 130.)

For the reasons set forth below, the Recommendation is adopted in its entirety and the Objection is overruled.

## I. BACKGROUND[1]

M.K. ("Mother") and J.M. ("Father") (collectively, "Parents") are the Child's adoptive parents. Mother adopted the Child in August 2020 after fostering him for about a year. (ECF No. 40 at ¶ 14.) Father is Mother's fiancé, the Child's power of attorney, and the Child's caregiver since August 2020. (*Id.*)

On November 29, 2021, the Child, who was four years old, was placed into inpatient care at Cedar Springs because of his dysregulated aggressive behaviors. (*Id.* at ¶¶ 22–29, 37.) Defendant determined that the Child's disabilities and behaviors warranted direct supervision by a dedicated staff member at all times ("1:1 order"). (*Id.* at ¶ 39.) Before Defendant admitted the Child, Parents aver that they relied on representations on Cedar Springs's website, such as that patients receive care with "undivided attention" and that there is "typically . . . 24-hour monitoring." (*Id.* at ¶ 31.) Similarly, Defendant assured Parents over the phone about the Child's 1:1 order. (*Id.* at ¶¶ 36, 73.) But, it is alleged, Cedar Springs was chronically short-staffed and staff were "not adequately trained to manage patients with precautions, such as assault or sexually acting out precautions." (*Id.* at ¶ 57; *see id.* at ¶¶ 52–59.)

On December 4, 2021, at around 9:00 A.M., Cedar Springs staff initiated down time for the children, meaning the children could clean their rooms or spend time in the

[1] The Background Section is drawn from the First Amended Complaint. (ECF No. 40.) The Court assumes the allegations in the First Amended Complaint to be true for the purpose of deciding whether to adopt the Recommendation and to sustain or overrule the Objection. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

common area. (*Id.* at ¶ 80.) On this day, the Child was alone in the Cedar Springs sensory room with another older boy patient, W.D. (the "Older Boy"). (*Id.* at ¶¶ 87, 97–99.) The Older Boy "was noted as having a 'sexually acting out' precaution requiring strict monitoring when around other patients . . . ." (*Id.* at ¶¶ 89–90.) Plaintiffs allege the Older Boy sexually assaulted the Child for five minutes while they were alone and unsupervised in the room together. (*Id.* at ¶¶ 79, 97, 99–104.) The Child reported the incident to a staff member, but Cedar Springs staff kept the children together "in the sensory room for over an hour under supervision, did not timely notify the police of [the Child's] parents, and misreported the details of the incident to the police." (ECF No. 113 at 2 (citing ECF No. 40 at ¶¶ 106–70).) "The sexual abuse, and Defendant's subsequent conduct, caused [the Child's] behavior to deteriorate and his mental health to worsen, and ultimately led to his indefinite placement at a residential inpatient treatment facility." (*Id.* at 3 (citing ECF No. 40 at ¶¶ 175–201).)

## II. PROCEDURAL HISTORY

Plaintiffs sued Defendant, bringing six claims: (1) negligence, (2) negligent hiring, supervision, and/or training, (3) violation of Colorado's Premises Liability Act, Colo. Rev. Stat. § 13-21-115, (4) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105, (5) fraudulent concealment, and (6) violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (ECF No. 40 at ¶¶ 202–73.) Defendant moved to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 54.) Plaintiffs responded, (ECF No. 72), to which Defendant replied (ECF No. 87). Plaintiffs filed a Motion for Early Partial Summary Judgment (ECF No. 55), Defendant responded (ECF No. 75), and Plaintiffs replied (ECF No. 89).

The undersigned referred the Motion for Early Partial Summary Judgment and the Motion to Dismiss to Judge Dominguez Braswell. (ECF No. 65.) Judge Dominguez Braswell concluded that Plaintiffs stated a claim for negligence (First Claim), negligent supervision (Second Claim), and fraudulent concealment (Fifth Claim), and thus recommended that those claims proceed. (ECF No. 113 at 26.) However, she concluded that Plaintiffs failed to state a claim under the Colorado Premises Liability Act (Third Claim), the Colorado Consumer Protection Act (Fourth Claim), and the Rehabilitation Act (Sixth Claim), and thus recommended those claims be dismissed. (*Id.*) She also recommended that the portion of Plaintiffs' First Amended Complaint "requesting exemplary damages [be] stricken without prejudice to file a motion to amend the pleadings in accordance with [Colo. Rev. Stat.] § 13-21-102(1.5)(a)." (*Id.*) She further recommended "that Plaintiffs be given 21 days after final resolution of these Motions to amend their complaint and conform their pleadings to the final dismissal order." (*Id.*) And finally, she recommended that the Motion for Early Partial Summary Judgment be denied. (*Id.*)

## III. LEGAL STANDARDS

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). An objection is

sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059.

## IV. ANALYSIS

Plaintiffs' objected only to the Recommendation that the Fourth and Sixth Claims be dismissed. (ECF No. 123 at 2.) Defendant responded that the Court should adopt the Recommendation in full. (ECF No. 130 at 1.) The Court begins by discussing the Sixth Claim before proceeding to the Fourth Claim.

### A. Rehabilitation Act

#### 1. Sixth Claim

The Court addresses the Sixth Claim for Relief first because it is the only federal claim that Plaintiffs have brought in this suit.

To state a claim under section 504 of the Rehabilitation Act, a plaintiff must "show (1) he is disabled; (2) he is otherwise qualified for participation in the program; (3) the program discriminates against the plaintiff; and (4) the program receives federal financial assistance." *Shepherd v. U.S. Olympic Comm.*, 464 F. Supp. 2d 1072, 1089–90 (D. Colo. 2006); *see* 29 U.S.C. § 794(a).

There is no dispute that Plaintiffs have sufficiently pleaded the first and fourth elements for Rule 12(b) purposes, that is, that the Child "is disabled or that Defendant receives federal funding." (ECF No. 113 at 20; *see* ECF No. 54 at 16; ECF No. 72 at 19; ECF No. 123 at 3.) The Court's analysis thus focuses on whether the Child is otherwise qualified for participation in the program and whether the program discriminates against the plaintiff.

The Tenth Circuit has held that "the term 'otherwise qualified' cannot ordinarily be applied in the comparatively fluid context of medical treatment decisions without distorting

its plain meaning." *Fitzgerald v. Corrs. Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) (citation modified). Plaintiffs argue that *Fitzgerald* does not apply here because it "applies only in cases where a medical treatment decision is at issue." (ECF No. 123 at 3.) But this case is indeed one where a medical treatment decision is at issue. Plaintiffs argue that there is no medical treatment decision at issue here because the Child's caregiver at Cedar Springs was not a licensed medical provider, instead comparing the caregiver to a "babysitter." (ECF No. 123 at 4.) That does not negate that the caregiver was acting pursuant to the 1:1 order, which was a medical treatment decision. Indeed, Defendant had to evaluate the Child's medical history, which included his disability, in order to determine that the 1:1 order was called for. The 1:1 order, then, is of "the sort of purely medical decisions that [the Tenth Circuit] ha[s] held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act." *Fitzgerald*, 403 F.3d at 1144. In that regard, Plaintiffs have failed to state a claim under the Rehabilitation Act.

As Judge Dominguez Braswell correctly observed, "[i]npatient behavioral health treatment is not 'generally available' care for which [the Child] was otherwise qualified, but was denied because of his disability." (ECF No. 113 at 21.) Plaintiffs have therefore not only failed to establish the second "otherwise qualified" element of their claim, they necessarily have also failed to establish the third element—that Defendant discriminated against the Child. For these reasons the Sixth Claim will be dismissed.

2. <u>Supplemental Jurisdiction</u>

Having determined that Plaintiffs have failed to state a claim under the Rehabilitation Act and that the Sixth Claim should be dismissed, the Court must decide whether to exercise supplemental jurisdiction.

A district court "may decline to exercise supplemental jurisdiction over a claim"

when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). According to the Tenth Circuit, "when all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Even so, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here, the Sixth Claim was Plaintiffs' only claim under which the Court had federal question jurisdiction and Plaintiffs' remaining claims are based in state law. Given the Magistrate Judge's and the undersigned's familiarity with the case, and the time already spent deciding these and other motions, the Court is of the view that the interests of justice are best served by exercising supplemental jurisdiction over the remaining claims in this matter.

**B. Colorado Consumer Protection Act (Fourth Claim)**

To state a claim under the Colorado Consumer Protection Act ("CCPA"), a plaintiff must show

> (1) The defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.

*Brodeur v. Amer. Home Assurance Co.*, 169 P.3d 139, 155 (Colo. 2007).

In terms of public impact, courts consider: "(1) the number of consumers directly

affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003). "[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Id.*

Judge Dominguez Braswell determined that "Plaintiffs' CCPA claim fails because the public impact element is insufficiently pled." (ECF No. 113 at 15.) The Court agrees. Plaintiffs' allegations most relevant to the public impact element relate to Cedar Springs's website and a phone call between Parents and Cedar Springs staff. These aspects of the Complaint, even when viewed in the aggregate, do not suffice to satisfy the public impact element.

Judge Dominguez Braswell noted that "the challenged practice here is a misrepresentation about 1:1 care, which was a specific assurance made to Plaintiffs over the phone." (ECF No. 113 at 16.) As Judge Dominguez Braswell pointed out, "Plaintiffs do not allege that those same misrepresentations were made to others." (ECF No. 113 at 16.) The Court similarly concludes this part of the claim is private in nature and thus is not actionable.

Judge Dominguez Braswell also correctly observes that "the alleged website statements are not the type of 'widespread advertisements' directed at the market in general that typically establish public impact" because "Defendant's website statements targeted customers who were already seeking behavioral health services." (*Id.* at 16 n.8.) Plaintiffs even admit that they could have done a better job with the Complaint: "Although,

concededly, Plaintiffs could have pled the details of Cedar Springs' other, prior, repeated violations even more specifically, this information is publicly available through the CDPHE and OSHA." (ECF No. 123 at 10.) But, "in assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019)).

In their Objection, Plaintiffs liken this case to other cases where courts have found a public impact. But those cases are inapposite because they involved widely disseminated information. *See Crowe v. Tull*, 126 P.3d 196, 199 (Colo. 2006) (involving "statewide marketing program, primarily through television advertisements"); *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) ("[T]he misrepresentations were directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers."); *Full Draw Prods. v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, 1007 (D. Colo. 2000) (finding public impact element met where "statements were disseminated widely through magazine articles, mass mailings, and faxes."). By contrast, this case involved a "single phone call" and "a single online page that, as discussed by Judge Braswell, was isolated to a limited, restricted population, not the public at large." (ECF No. 130 at 10.)

Plaintiffs also cite *Mott v. Narconon Fresh Start*, as a case where a court found that a plaintiff satisfied the public impact element where the defendant made misrepresentations on its website. 2015 WL 1259277, at *6 (D. Colo. Mar. 17, 2015). But here, "Plaintiffs found Cedar Springs not with an internet search like in *Mott*, but with a

referral from a provider at Children's Hospital." (ECF No. 130 at 10; *see* ECF No. 40 at ¶¶ 26–27, 29–30.) Furthermore, the website in *Mott* contained "extreme claims, such as that the subject program 'had a 76% success rate,' and that it could 'remove drug residues that cause drug cravings and relapse.' " (ECF No. 130 at 10.) Compare those statements to the ones Plaintiffs took issue with on Cedar Springs's website: "At best, the website represents that Defendant offers a secure and comfortable environment, that they arrange their programs in a way that helps deliver complete care and undivided attention, and that their programs '*typically* involve [. . . .] 24-hour monitoring.' " (ECF No. 113 at 16 (emphasis and alteration in original) (quoting ECF No. 40 at ¶ 31).)

Accordingly, the Court will adopt Judge Dominguez Braswell's Recommendation to dismiss the Fourth Claim because Plaintiffs have failed to demonstrate the public impact element required by the CCPA.

## V. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court ADOPTS the Recommendation (ECF No. 113) in its entirety;
2. Plaintiffs' Objection (ECF No. 123) to the Recommendation is OVERRULED;
3. Defendant's Motion to Dismiss (ECF No. 54) is GRANTED IN PART and DENIED IN PART as follows:
    a. Plaintiffs' Colorado Premises Liability Act claim (Third Claim) and Rehabilitation Act claim (Sixth Claim) are DISMISSED WITH PREJUDICE; and
    b. Plaintiffs' Colorado Consumer Protection Act claim (Fourth Claim) is DISMISSED WITHOUT PREJUDICE;

c. Defendant's Motion to Dismiss is DENIED in all other respects;

4. The portion of Plaintiffs' First Amended Complaint (ECF No. 40) requesting exemplary damages is STRICKEN WITHOUT PREJUDICE;
5. Plaintiffs' Motion for Early Partial Summary Judgment (ECF No. 55) is DENIED; and
6. No later than **September 4, 2026**, the Parties are DIRECED to contact the Chambers of Judge Dominguez Braswell to set a Status Conference, or such other proceeding as Judge Dominguez Braswell deems appropriate to move this action forward.

Dated this 2nd day of September, 2026.

BY THE COURT:

William J. Martínez
Senior United States District Judge